[No. B072520. Second Dist., Div. Seven. June 16, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EARL HOWARD, Defendant and Appellant.

**COUNSEL**

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Mitchell Keiter, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LILLIE, P. J.—James Earl Howard appeals from the judgment entered following a jury trial that resulted in his conviction of selling cocaine, with his admission he had a prior felony conviction for which he served a separate prison term. (Health & Saf. Code, § 11352, subd. (a); Pen. Code, § 667.5, subd. (b).) He contends: "I. The prosecutor's remarks to the jury constituted misconduct which requires reversal of appellant's judgment of conviction. II. The trial court committed reversible error in failing to properly advise appellant of his constitutional rights before he waived those rights and admitted the prior conviction."

Viewed in accordance with the usual rules on appeal (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), the evidence established that, about 5:50 p.m. on August 26, 1992, Inglewood Police Officer Steven Gentry and Agent Arnold Allen of the Alcohol, Tobacco and Firearms Agency were working a "buy" program with a narcotics task force. They drove to 112th Street and Prairie Avenue in Inglewood where appellant was standing at the curb with three or four other males. Appellant caught Gentry's eye and waved Gentry to his location. Gentry drove the undercover police car to the curb. Appellant asked Gentry and Allen what they needed, and Gentry told appellant he wanted a "20," street terminology for a $20 rock of cocaine. Gentry handed appellant a prerecorded $20 bill and appellant walked away out of sight and returned 60 seconds later to Gentry's driver's window. Appellant handed a tinfoil bindle to Gentry. The tinfoil bindle contained .084 grams of rock cocaine. The officer and agent drove off and signalled to the surveilling units that the "buy" was completed. They gave the arrest team the following description of the seller: a six-foot male, white shirt with red writing, slicked-back hair, and a medium complexion.

Other officers from the task force detained appellant and the other males at appellant's location. Within two minutes after the sale's completion, Gentry returned and identified appellant as the seller. Appellant was arrested. The officers found no prerecorded currency or controlled substances on appellant's person. That was not unusual, Gentry explained, since drug sellers commonly do not retain the money or the narcotics and frequently work with another person who serves as a "money man" and takes charge of the cash. It was also not unusual for drug dealers to hide their narcotics nearby the sale site for easy retrieval.

After appellant's arrest, Gentry immediately drove to the police station and booked appellant. Gentry and Allen prepared the evidence envelope and placed the one cocaine rock into the envelope. Allen mistakenly wrote incorrect booking and crime report numbers on the evidence envelope. However, Gentry was sure that the rock of cocaine in the evidence envelope was the rock recovered during the "buy." Gentry had participated in only one drug purchase or arrest that day and had personally retained the rock of cocaine until Allen weighed it at the police station. Gentry put his initials on a piece of paper, placed the paper and the bindle of cocaine into an evidence baggie and placed the evidence baggie into the evidence envelope. The evidence envelope listed the date of the "buy" and both Gentry's and Allen's names.[1]

During final argument, the prosecutor introduced her rebuttal comments by stating: "Ladies and gentlemen, essentially what the defense has indicated

---

[1]Gentry testified that Agent Allen was presently stationed with the Alcohol, Tobacco and Firearms Agency in New York. Gentry also said tape-recording the oral buy transaction was not the usual police procedure.

when discussing the evidence, you are all going to have be [*sic*] someone like him. You would be very lucky. You would need someone who could twist the facts and twist the law and all the information that has just been presented."

Defense counsel immediately objected that the comment constituted a personal attack on defense counsel. Out of the jury's presence, the prosecutor explained that she wanted to tell the jury that in his closing comments defense counsel had presented a skewed view of the facts and applicable law. Defense counsel protested that he had not attacked the prosecution and repeated that the prosecutor's comments amounted to a personal attack. The prosecutor argued that she was entitled to point out to the jury that defense counsel's presentation of the case was inaccurate.

The court instructed the prosecutor that she should proceed with her argument without mentioning defense counsel. The court commented, "Your interpretation of the facts is one thing. His [defense counsel's] interpretation is something else." Defense counsel made other comments indicating he was personally offended by the reference, and the prosecutor said she had not intended by her comments to attack him.

Before the jury, the prosecutor continued with her rebuttal, telling the jury she wished to address what defense counsel said during his argument and wanted to give the jury "a number of perspectives . . . with regards to facts stated and with regards to the law. . . ." She said: "Counsel is a good attorney. Counsel is doing a good job. His job is to do the best he can for his client. And how can he do that? Well, he can attack the officer and he can attack the evidence. Let's look at what we heard during argument and let's compare it to what we have during trial."[2]

The prosecutor further reminded the jury that there was more to the reasonable doubt instruction than mentioned by defense counsel and read a portion of the instruction that defense counsel had failed to mention during his argument. She explained that the error in identifying the evidence envelope was insignificant and requested that the jury not get confused and direct its attention to the significant facts proving the sale. She explained what she regarded as the significant facts which had been proved and that, in that respect, Gentry's testimony was unimpeached. The prosecutor explained that Allen inconveniently was in New York and it cost money to secure his presence for trial, which explained his absence. The prosecutor urged Gentry's credibility was not affected by the error in the evidence envelope's identification or by any inability by Gentry to understand some of defense counsel's questions during cross-examination. She said there also was no

---

[2]Defense counsel made no further objection to the prosecutor's rebuttal.

failure of proof because the surveilling police units failed to recover marked money on appellant's person at the time of the arrest and there was no requirement that the police tape-record the "buy."

At 3:05 p.m. on November 25, 1992, the jury commenced deliberations. The jury returned with its verdict of guilt that same day at 4 p.m.

After the verdict, the court and prosecutor explained that appellant had a right to a jury and court trial as to the allegation of the prior separate prison term allegation. Appellant waived his right to both a jury and a court trial. However, the court took appellant's admission he suffered the prior conviction in case No. A399644 on March 3, 1987, without admonishing appellant as to, and obtaining waivers of, appellant's constitutional rights to confrontation and against self-incrimination.[3]

At sentencing, the court imposed a five-year prison term, consisting of a four-year middle term for selling cocaine and a consecutive one-year term for the prior prison term enhancement.

■ The contention that the prosecutor committed prejudicial misconduct in her closing comments lacks merit. Appellant failed to request the jury be admonished to disregard any inference in the prosecutor's comments impugning the integrity of defense counsel. Apart from whether the failure precluded appellate review (*People* v. *Clair* (1992) 2 Cal.4th 629, 662 [7 Cal.Rptr.2d 564, 828 P.2d 705]; *People* v. *Benson* (1990) 52 Cal.3d 754, 794 [276 Cal.Rptr. 827, 802 P.2d 330]), a reversal is not required. The prosecutor simply commented that the jury should not be distracted from the relevant

---

[3]After the jury verdict, the following occurred: "THE COURT: Mr. Howard, you obviously have a right to a jury trial based upon this prior allegation, if you want. You can have the jury make a determination as to whether or not there is a true prior, waive jury trial and submit it to me as a court trial or you can admit it, depends on what you want to do. [¶] THE DEFENDANT: I admit it and waive jury. [¶] THE COURT: Do you want to take the waivers? [¶] [PROSECUTOR]: James Howard, sir, is that your true and correct name? [¶] THE DEFENDANT: Yes, ma'am. [¶] [PROSECUTOR]: Before you admit this prior, I want to inform you of two things. One is with regards to the prior, it has been alleged March 3, 1987, you have a prior robbery conviction, A 399644[,] under Penal Code section 667.5, which means it is going to add an additional one year time. Before you admit or deny that, I want you to make sure you understand two things. [¶] You have a right to a jury trial on this prior. That means I present evidence to this jury. They would have to come back unanimous that this was the prior you suffered. [¶] Second thing, you have a right to have the court listen to the evidence. That would be to present evidence to the court and she would make a determination to whether this prior is yours or not. [¶] Do you understand both your right to a jury trial and court trial? [¶] THE DEFENDANT: Yes, ma'am. [¶] [DEFENSE COUNSEL]: I would correct the statement of the D.A., that the . . . court has discretion to not add consecutively this year for 667.5(b) prior. [¶] THE COURT: I think that is correct. [¶] [PROSECUTOR]: As long as you understand your right to a jury trial and court trial, do you give up each of these rights? [¶] THE DEFENDANT: Yes, ma'am. [¶] THE COURT: Do you . . . admit you suffered a prior conviction, A 399644[,] on March 3, 1987? [¶] THE DEFENDANT: Yes."

evidence and the reasonable and logical inferences reasonably to be drawn from that evidence. Any impermissible inference in the prosecutor's comment that defense counsel may have acted improperly in presenting the defense was, at best, harmless error in light of the overwhelming evidence that appellant participated in the cocaine sale. (Cf. *People* v. *Marquez* (1992) 1 Cal.4th 553, 575-576 [3 Cal.Rptr.2d 710, 822 P.2d 418]; *People* v. *Breaux* (1991) 1 Cal.4th 281, 305-306 [3 Cal.Rptr.2d 81, 821 P.2d 585]; *People* v. *Bell* (1989) 49 Cal.3d 502, 538 [262 Cal.Rptr. 1, 778 P.2d 129].)

The contention that the failure to obtain express, on-the-record waivers of appellant's rights to confrontation and against self-incrimination invalidates appellant's admission of the prior prison term enhancement is well taken. Appellant was admonished as to his right to a jury and court trial and waived that right. However, he was not admonished as to his rights to confrontation and against self-incrimination explicitly, or in terms amounting to a reasonable substitute for an explicit admonition. Appellant therefore did not make a valid waiver of his constitutional rights and a remand is necessary for a redetermination of the truth of the prior prison term enhancement allegation. (Cf. *People* v. *Johnson* (1993) 15 Cal.App.4th 169, 177-178 [18 Cal.Rptr.2d 650]; *People* v. *Guzman* (1993) 14 Cal.App.4th 1420, 1422-1424 [18 Cal.Rptr.2d 380]; *People* v. *Moore* (1992) 8 Cal.App.4th 411, 417-418 [10 Cal.Rptr.2d 286].)

The part of the judgment imposing an additional sentence of one year pursuant to Penal Code section 667.5, subdivision (b), is reversed and the cause is remanded for trial on the issue of whether appellant suffered that prior conviction and for resentencing. In all other respects, the judgment is affirmed.

Johnson, J., concurred.

**WOODS (Fred), J.,** Concurring and Dissenting.—I concur in the affirmance of appellant's conviction of selling cocaine but dissent, with some misgiving, from the reversal of appellant's admission of a state prison prior (Pen. Code, § 667.5).

Although reasonable minds could differ, I am persuaded by "the totality of the relevant circumstances . . . that defendant's admission of the prior conviction was voluntary and intelligent despite the absence of an explicit admonition on the privilege against self-incrimination [and right of confrontation]." (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1180 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) As set forth in the majority opinion (fn. 3, *ante*, p. 1664), the colloquy between appellant and both the trial court and prosecutor makes clear appellant knew he had a right *not* to admit the prior. As *Howard* observed, "when the record demonstrates that knowledge there is 'no need to

go farther and attach to such knowledge the talismanic phrase "right not to incriminate himself." ' " (*Ibid.*)

Similarly, I believe the record demonstrates appellant knew he had a right to confront witnesses and voluntarily waived that right. Apposite are the following circumstances: the prosecutor explained to appellant that if there was a trial she would "*present* evidence" either to the jury or trial court; the jury or trial court would "listen to the evidence" and make a determination; appellant stated he understood this was what a trial meant; appellant had just finished participating in a jury trial where he *was* confronted by witnesses; appellant demonstrated legal sophistication in his cocaine sale: he obtained the cocaine out of the undercover officer's sight and within seconds after the sale disposed of the prerecorded $20 bill without being detected; appellant was an adult with prior exposure to the criminal justice system.

A word about my misgiving. For over two decades the law in California had been unmistakable: a valid guilty plea or admission required express, on the record, admonitions and waivers of jury trial, confrontation, and self-incrimination. Prosecutors, who typically take guilty pleas and admissions, thus had the strongest motivation to make the admonitions explicit and complete. To err invalidated the plea or admission.

Now, under *People* v. *Howard,* although such advisements are still required pursuant to the court's supervisory powers (*People* v. *Howard, supra,* 1 Cal.4th at p. 1175), to err may or may not invalidate the plea or admission. Prosecutors, I fear, will have less motivation to make the admonitions explicit and complete. Appellate opinions, such as this dissent, which forgive such prosecutor error may induce rather than discourage such error.

Lest I be misunderstood: the district attorney and local prosecutor have a duty to train their attorneys in the proper taking of guilty pleas and admissions; since approximately 80 percent of criminal convictions are by guilty plea, there is no more important duty; a deputy district attorney or deputy city attorney who fails to take a valid guilty plea or admission has provided ineffective assistance of counsel to his/her client, the People; such failure should result in administrative sanction.

Criminal justice resources should not be squandered by needlessly flawed guilty pleas and admissions.

Respondent's petition for review by the Supreme Court was denied September 22, 1994.